UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/14/16
```

MARTINE VERBRUGGHEN
CAMPEGGI,

                           Plaintiff,

          - against -

ARCHE INC., ARCHE USA, INC., ARCHE
WHOLESALE, INC., ARCHE BOSTON,
INC., ARCHE MADISON AVENUE, INC.,
ARCH WEST 57 STREET, INC. ARCHE
INTERNET INC., ARCHE
WESTCHESTER, INC., ARCHE LAS
VEGAS, INC., ARCH SAN FRANCISCO
INC., ARCHE SHOES
NEWBURY, INC., ANDREE HELAINE,
CATHERINE HELAINE and PIERRE-
EMANUEL HELAINE,

                           Defendants.

**MEMORANDUM
OPINION & ORDER**

15 Civ. 1097 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

          In this action, Plaintiff Martine Campeggi alleges breach of contract, fraud,

tortious interference, and quasi-contract claims arising out of her employment relationship with

Defendants – entities and individuals associated with Arche, a shoe distributor. (Second

Amended Complaint ("SAC") (Dkt. No. 30)) Plaintiff alleges that Defendants breached her

employment contract by not paying her the amounts promised in that agreement, and by

terminating her employment. The corporate defendants have moved to dismiss for failure to

state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 33)

## BACKGROUND[1]

Arche[2] designs and manufactures "high-end footwear."  (SAC (Dkt. No. 30) ¶ 41)  In 1985, Arche, Defendant Andree Helaine, and Plaintiff "formed a partnership . . . to develop and expand [Arche's] market . . . in the United States and internationally."  (Id.)  Andree Helaine is the mother of Defendants Catherine and Pierre-Emanuelle Helaine (id. ¶ 44), and together they serve as Arche's "principal officers."[3]  (Id. ¶ 74)  Plaintiff served as the president of Arche.  (Id. ¶ 16)  Between 1985 and 2001, Plaintiff performed services for Arche pursuant to a verbal agreement.  (Id. ¶ 42)

On November 13, 2001, Plaintiff entered into a written employment agreement (the "Agreement") "with defendant Andree Helaine on behalf of defendants Arche, its agents, servants and/or employees."[4]  (Id. ¶ 43)  The Agreement provided that Plaintiff will serve "as the President of Arche Inc., Arche.com Inc[.], and [all] United States operations [including] any new entities formed or utilized during the terms of [the] contract."  (Id. ¶ 45)  The Agreement "was in force and effect for two specific terms," with the first running "from January 1, 2002 to December 31, 2006," and the second running "from January 1, 2007 forward at the discretion and exercisable by Plaintiff."  (Id.)  The Agreement "stated that [P]laintiff was to receive fixed

---

[1]  The facts set forth below are drawn from the SAC and are presumed true for purposes of resolving the corporate defendants' motion to dismiss.  See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).

[2]  The SAC names eleven Arche entities as defendants – Arche Inc.; Arche USA, Inc.; Arche Wholesale, Inc.; Arche Boston, Inc.; Arche Madison Avenue, Inc.; Arche West 57 Street, Inc.; Arche Internet, Inc.; Arche Westchester, Inc.; Arche Las Vegas, Inc.; Arche San Francisco, Inc.; and Arche Shoes Newbury, Inc. (the "Corporate Defendants") (id. ¶¶ 2-12) – and refers to all of these entities collectively as "Arche."  (See id. (noting that each entity is "hereinafter referred to as 'Arche'"))  The Court adopts this convention for purposes of addressing the Corporate Defendants' motion to dismiss.

[3]  The SAC further alleges that the Helaines are Arche's largest shareholders.  (Id. ¶ 32)

[4]  The Agreement has not been provided to the Court.

2

compensation in the sum of A) $150,000, for administrative salary . . . ; B) Wholesale Fee in the sum of $250,000; and C) Retail fee in the sum of $200,000, amounting [to] fixed compensation per year in the total amount of $600,000." (Id. ¶ 46)

The Agreement "further stated that [P]laintiff was also to receive variable compensation to be paid on two percent (2%) of all sales of Arche, Inc. in excess of $10,000,000. (Gross Sales Less discounts, Returns, etc.), with a guaranteed minimum of $600,000 per annum." (Id.)

Plaintiff alleges that from the outset of the Agreement in January 2002, "until the present time, the defendants Arche . . . and defendants Helaine reduced and withheld [P]laintiff's salary in the amount of $150,000 per year, without any modification to the [Agreement]." (Id. ¶ 55) Accordingly, Defendants "failed to pay [P]laintiff's salary in the amount of $1,500,000.00[] from January 2002 to the present time." (Id. ¶ 56) The SAC further alleges that "defendants Arche . . . and defendants Helaine[] reduced [P]laintiff's variable payments in the amount of $136,221.20 per year without any modification to the [Agreement]." (Id. ¶ 57) Plaintiff claims that she is owed $1,634,454.40 in unpaid variable compensation. (Id. ¶ 58)

Plaintiff also claims that she sold 15,000 pairs of Arche shoes in Canada, and "should have earned approximately $1.75 million dollars in commission, but was paid nothing." (Id. ¶ 59)

After Plaintiff completed the first term of the Agreement, which ended on December 31, 2006, the SAC alleges that she "exercised . . . the option regarding the second term of the employment contract orally and in writing." (Id. ¶ 50)

3

On September 19, and September 24, 2014, Plaintiff informed Defendants that she intended to retire on December 31, 2017, and that she would "fully implement a management succession plan before [then]." (Id. ¶¶ 51-53)

On October 8, 2014, Plaintiff received a letter from Catherine Helaine terminating her employment, effective immediately. (Id. ¶ 61)

Plaintiff further alleges that on October 8, 2014, Defendant Catherine Helaine "procured [P]laintiff's own manager, George Wichner[,] who was employed at the Plaintiff's 3rd Avenue Shoe Store, New York City, New York . . . to leave his position as manager with [P]laintiff, and take over [P]laintiff's employment position with [D]efendants Arche." (Id. ¶ 65)

Plaintiff filed the instant action on February 17, 2015. (Cmplt. (Dkt. No. 1)) An Amended Complaint was filed on April 2, 2015 (Am. Cmplt. (Dkt. No. 12), and the Second Amended Complaint was filed on July 14, 2015. (SAC (Dkt. No. 30))

The SAC alleges the following causes of action against all Defendants: breach of contract (id. ¶¶ 85-92); fraud (id. ¶¶ 93-99); tortious interference with business relationship (id. ¶¶ 100-106); tortious interference with contract (id. ¶¶ 107-112); breach of the implied covenant of good faith and fair dealing (id. ¶¶ 113-120); unjust enrichment (id. ¶¶ 121-124); quantum meruit (id. ¶¶ 133-138); and civil RICO (id. ¶¶ 139-171). The SAC also pleads a cause of action for "piercing the corporate veil" as against the Helaine defendants. (Id. ¶¶ 125-132)

The Corporate Defendants have moved to dismiss all claims against them.[5] (Dkt. No. 33)

---

[5] The Amended Complaint and the SAC have not been served on the individual defendants. (See June 30, 2015 Conf. Tr. (Dkt. No. 39) at 2-3) At a June 30, 2015 conference, the Court warned Plaintiff that it would not permit "service on the individual defendants to delay the case.

4

## DISCUSSION

The Corporate Defendants argue that (1) Plaintiff's breach of contract claim fails, because she was an at-will employee who elected to stay after her compensation was reduced; (2) Plaintiff's allegations do not satisfy Fed. R. Civ. P. 9(b)'s requirements for pleading fraud; (3) Plaintiff has not pled facts sufficient to make out a claim for tortious interference with business relations; (4) Plaintiff has not pled an enforceable contract right or damages sufficient to support her claim for tortious interference with contract; (5) Plaintiff's implied covenant of good faith and fair dealing claim fails, because she was an at-will employee; (6) Plaintiff's claims for unjust enrichment and quantum meruit fail, because she received reasonable compensation for her services; and (7) Plaintiff has not adequately pled a civil RICO claim. (Def. Br. (Dkt. No. 34))

## I.    MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

---

So I want plaintiff to move expeditiously to serve whatever individuals plaintiff believes are proper defendants in the case." (Id. at 3) Despite this warning, over the past thirteen months Plaintiff has not effected service on the individual defendants, nor has she requested an extension of time to serve the individual defendants.

5

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. Cnty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). A district court may also "rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998); see also Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004) ("[W]e may also look to public records . . . in deciding a motion to dismiss."). "In the motion to dismiss context, . . . a court should generally take judicial notice 'to determine what statements [the documents] contain[ ] . . . not for the truth of the matters asserted.'" Schubert v. City of Rye, 775 F. Supp. 2d 689, 698 (S.D.N.Y. 2011) (quoting Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991)).

Fed. R. Civ. P. 9(b) sets standards for pleading fraud claims, and requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires a plaintiff to "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were

6

fraudulent.'" Kottler v. Deutsche Bank AG, 607 F. Supp. 2d 447, 462 (S.D.N.Y. 2009)

(quoting Stevelman v. Alias Research, Inc., 174 F.3d 79, 84 (2d Cir. 1999)).

## II.     THE NATURE OF PLAINTIFF'S EMPLOYMENT AT ARCHE

Defendants argue that Plaintiff was an at-will employee, and that accordingly

they "were free to modify her compensation." (Def. Br. (Dkt. No. 34) at 6)[6] According to

Defendants, because Plaintiff was an at-will employee, her "claims for breach of contract,

tortious interference with contract, and breach of the implied covenant of good faith and fair

dealing must all be dismissed." (Id.)

Plaintiff argues that "Defendants' contention that [she] was somehow an 'at-will'

employee is both false and a red herring," because (1) the Agreement includes at least one

definite term, and (2) Defendants can still be held liable for breach of contract and tortious

interference even if Plaintiff is an at-will employee. (Pltf. Opp. Br. (Dkt. No. 35) at 7)

### A.     Applicable Law

"New York has a well-established at-will employment doctrine: '[a]bsent an

agreement establishing a fixed duration, an employment relationship is presumed to be a hiring

at will, terminable at any time by either party.'"[7] Albert v. Loksen, 239 F.3d 256, 264 (2d Cir.

2001) (quoting Sabetay v. Sterling Drug, Inc., 69 N.Y.2d 329, 333 (1987)); see also Bernhardt

v. Tradition N. Am., 676 F. Supp. 2d 301, 304-05 (S.D.N.Y. 2009) ("Where a term of

---

[6] The page numbers of documents referenced in this opinion correspond to the page numbers designated by this District's Electronic Case Filing system.

[7] Both sides rely on New York law in their briefs. Accordingly, they have implicitly agreed to the application of New York law. See Golden Pac. Bancorp v. F.D.I.C., 273 F.3d 509, 514 n.4 (2d Cir. 2001) ("The parties' briefs assume that New York substantive law governs the issues of contract interpretation and statute of limitations presented here, and such implied consent is, of course, sufficient to establish the applicable choice of law."); Corbett v. Firstline Sec., Inc., 687 F. Supp. 2d 124, 128 (E.D.N.Y. 2009) (applying New York law where "both parties cite exclusively to New York contract law in their argument").

7

employment is for an indefinite period of time, it is presumed to be an employment at will that is freely terminable by either party at any time for any reason or even for no reason."); Weiler v. Nat'l Multiple Sclerosis Soc., No. 79 Civ. 5856, 1980 WL 104, at *4 (S.D.N.Y. Feb. 27, 1980) ("a contract for employment with no specific term is terminable at will and does not give rise to a cause of action" (citing Parker v. Borock, 5 N.Y.2d 156, 159 (1959) ("[P]laintiff's contract of employment was not a hiring for a specific term. Hence, standing alone, it was terminable at will, and would not give rise to a cause of action."))); Edwards v. Citibank, N.A., 418 N.Y.S.2d 269, 270 (N.Y. Sup. Ct. 1979) ("[I]t is hornbook law that any contract for an indefinite period of time is terminable at the will of either party at any time. . . . Such a contract is terminable for - any reason or for no reason." (internal citations and quotation marks omitted)).

"[T]he employment at will doctrine gives an employer 'a nearly unfettered right to discharge an employee.'" Bernhardt, 676 F. Supp. 2d at 305 (quoting Jones v. Dunkirk Radiator Corp., 21 F.3d 18, 21 (2d Cir. 1994)). A plaintiff may overcome the at-will presumption, however, "by establishing that the employer made the employee aware of its express written policy limiting its right of discharge and that the employee detrimentally relied on that policy in accepting the employment." De Petris v. Union Settlement Ass'n, Inc., 86 N.Y.2d 406, 410 (1995) (citing Weiner v. McGraw-Hill, Inc., 57 N.Y.2d 458, 465-66 (1982)). The New York Court of Appeals has noted that this standard imposes an "explicit and difficult pleading burden" on plaintiffs, and that – as a result – "plaintiffs alleging wrongful discharge have not fared well." Sabetay, 69 N.Y.2d at 334-35 (1987) (collecting cases); see also Nicholas v. Wyndham Hotel Grp., LLC, No. 14-CV-5726 PKC, 2015 WL 1011724, at *3 (S.D.N.Y. Mar. 9, 2015) ("The New York Court of Appeals has described itself as 'exhibit[ing] a strong

8

disinclination to alter the traditional rule of at-will employment.'" (quoting Horn v. N.Y. Times, 100 N.Y.2d 85, 93 (2003))).

## B.   Analysis

This Court must first determine whether Plaintiff has pled facts sufficient to overcome the presumption of at-will employment. The SAC alleges that Plaintiff's employment agreement provided for "two specific terms." (SAC (Dkt. No. 30) ¶ 45) The first term ran from January 1, 2002 to December 31, 2006, while the second term ran "from January 1, 2007 forward at the discretion and exercisable by Plaintiff." (Id.) Accepting these allegations as true, Plaintiff's employment agreement includes both a definite term and an indefinite term.

With respect to the contract's definite term – from January 1, 2002 to December 31, 2006 – the Court will assume arguendo that Plaintiff has pled sufficient facts to overcome the presumption of at-will employment. However, "[i]n New York, an action for breach of contract has a six-year statute of limitations." NEM Re Receivables, LLC v. Fortress Re, Inc., No. 15 Civ. 3875, 2016 WL 1387970, at *6 (S.D.N.Y. Mar. 24, 2016) (citing N.Y. C.P.L.R. 213), reconsideration denied, 2016 WL 3144390 (S.D.N.Y. May 5, 2016). Moreover, "[a] breach of contract claim accrues at the time of breach, even if plaintiff does not suffer damages until a later date." Lehman XS Trust, Series 2006-4N ex rel. U.S. Bank Nat'l Ass'n v. Greenpoint Mortgage Funding, Inc., 991 F. Supp. 2d 472, 476 (S.D.N.Y. 2014), aff'd, 643 F. App'x 14 (2d Cir. 2016). Accordingly, given the SAC's allegations that the first term ended on December 31, 2006, and that Defendants breached their compensation obligations throughout the period of the first term (January 1, 2002 through December 31, 2006), any claim based on Defendants' alleged breach of their compensation obligations during the first term could have

9

been brought no later than December 31, 2012. Plaintiff filed this action on February 17, 2015,

however. (Cmplt. (Dkt. No. 1) Accordingly, any breach claim founded on the first term is

time-barred.

    With respect to the contract's second term – "from January 1, 2007 forward at

the discretion and exercisable by [Plaintiff]" (SAC (Dkt. No. 30) ¶ 45) – Plaintiff has not

overcome the presumption of at-will employment. Indeed, such language constitutes an

indefinite term as a matter of law.[8] See Plantier v. Cordiant plc, No. 97 Civ. 8696 (JSM), 1998

WL 661474, at *1 (S.D.N.Y. Sept. 24, 1998) (concluding that plaintiff was an at-will employee

where her employment agreement "provide[d] for an employment for an indefinite duration

subject only to a three-month notice period"); Weiler, 1980 WL 104, at *4 ("The alleged oral

employment contract, providing that plaintiff could work 'until he chose to retire,' is without

doubt, a contract for an indefinite period of time. . . . In fact, the very phrase, 'until he chose to

retire,' is indicative of the indefinite time period of the contract."); Kern, Suslow Sec., Inc. v.

Baytree Assocs., Inc., 264 A.D.2d 639, 640 (1st Dept. 1999) (an employment agreement that is

"terminable at the pleasure of either party upon reasonable notice" is a "contract at will").[9]

    Because the second term pleaded in the SAC constitutes an indefinite term, the

presumption that Plaintiff was an at-will employee from January 1, 2007 until her termination

---

[8] Plaintiff makes no real effort to dispute this fact. (See Pltf. Opp. Br. (Dkt. No. 35) at 7 ("There can be no argument that the Contract had at least one specific term between January 1, 2002 and December 31, 2006. . . ."))

[9] Rooney v. Tyson, 91 N.Y.2d 685 (1998) is not to the contrary. In that case, the New York Court of Appeals concluded that "an oral contract between a fight trainer and a professional boxer to train the boxer 'for as long as the boxer fights professionally' [was] a contract for a definite duration." Rooney, 91 N.Y.2d at 694. The Rooney court found that what "ma[de] th[e] case distinctive within the myriad of arrangements people may undertake" was that Mike Tyson's boxing career would reach a "definable . . . conclusion" that was "legally and experientially limited and ascertainable by objective benchmarks." Id. at 692. Here, of course, Plaintiff's "discretion" under the Agreement was not so limited or ascertainable.

10

applies. See Minovici v. Belkin BV, 109 A.D.3d 520, 522 (2nd Dept. 2013) ("Further, the

plaintiffs themselves alleged in the complaint that, pursuant to the June 2008 employment

contract, Catalin's employment was 'to continue without any specific date for termination.'

Thus, Catalin was presumptively an at-will employee." (internal citations omitted)); see also

Nicholas, 2015 WL 1011724, at \*4 n.3 ("It is Nicholas's burden to allege facts showing that the

at-will presumption has been overcome, and, as this opinion demonstrates, the complaint fails to

do this.").

Plaintiff's at-will employment status – during the Agreement's second term – is

fatal to both her breach of contract claim and her claim for breach of the implied covenant of

good faith and fair dealing. In New York,

> "[c]ase law dictates that when parties have an employment contract terminable at
> will, the contract can be modified and different compensation rates fixed without
> approval of the other party since the dissatisfied party has a right to leave his
> employment." Gen. Elec. Tech. Servs. Co. v. Clinton, 173 A.D.2d 86, 88 (3d
> Dept. 1991); see Kronick v. L.P. Thebault Co., 70 A.D.3d 648, 648 (2d Dept.
> 2010); Int'l Paper Co. v. Suwyn, 951 F. Supp. 445, 448 (S.D.N.Y. 1997). If an
> employer changes the terms of its employee's at-will employment contract "and
> the employee chooses to remain in the employer's employ after being advised of
> that change, the employee is deemed to have acquiesced to the new terms of
> employment and cannot later claim compensation based on the terms of the
> original contract." In re Footstar, Inc., No. 04-22350 (ASH), 2007 WL 1989290,
> at \*5 (Bankr. S.D.N.Y. July 6, 2007); see Plank v. Watson Bowman Acme Corp.,
> 46 A.D.3d 1338, 1339 (4th Dept. 2007); Arrouet v. Brown Bros. Harriman & Co.,
> No. 02 Civ. 9016(TPG), 2005 WL 646111, at \*4 (S.D.N.Y. Mar. 18, 2005);
> Dwyer v. Burlington Broads. Inc., 295 A.D.2d 745, 746 (3d Dept. 2002).

Arakelian v. Omnicare, Inc., 735 F. Supp. 2d 22, 32-33 (S.D.N.Y. 2010); see also Bessemer

Trust Co. v. Branin, 618 F.3d 76, 93 (2d Cir. 2010) ("If [plaintiff] could be dismissed at will by

Bessemer, it seems to us, the lesser action of changing his role at the firm, subject of course to

his choosing to depart at his option instead, was permissible too."), certified question accepted,

15 N.Y.3d 836 (2010), and certified question answered, 16 N.Y.3d 549 (2011).

Here, Plaintiff claims that Defendants never complied with the salary and variable compensation provisions set forth in the Agreement, which became effective on January 1, 2002. (SAC (Dkt. No. 30) ¶¶ 55-58) Although Plaintiff alleges that she "demanded the aforesaid payments" (id. ¶ 60), Defendants did not – according to Plaintiff – ever pay her the compensation she was entitled to under the Agreement. (Id. ¶¶ 55-58, 66) Plaintiff nonetheless continued working for Defendants – through the Agreement's first term, and then for seven years of at-will employment that began on January 1, 2007. (Id. ¶¶ 53-54, 61) In doing so, Plaintiff "'is deemed to have acquiesced to the new terms of [her] employment,'" and she cannot now "'claim compensation based on the terms of the original contract.'" Arakelian, 735 F. Supp. 2d at 32-33 (quoting In re Footstar, Inc., 2007 WL 1989290, at *5); see also Jennings v. Huntington Crescent Club, 120 A.D.3d 1394, 1394 (2d. Dept. 2014) ("Here, the plaintiff's allegations reflect that he ratified the actions of which he now complains by choosing to remain in the defendants' employ." (citing Kronick, 70 A.D.3d at 648-49)).

As an at-will employee, Plaintiff also cannot contend that her termination constitutes a breach of contract. See Reddington v. Staten Island Univ. Hosp., 511 F.3d 126, 138 (2d Cir. 2007) ("Reddington has not alleged sufficient facts to suggest that she was not an at-will employee, and therefore she has not adequately alleged that the Hospital breached an employment contract by terminating her."), certified question accepted, 9 N.Y.3d 1020, 881 N.E.2d 214 (2008), and certified question answered, 11 N.Y.3d 80, 893 N.E.2d 120 (2008); see also Bernhardt, 676 F. Supp. 2d at 305. Accordingly, Plaintiff's breach of contract claim will be dismissed.

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing also fails. New York "neither recognizes a tort of wrongful discharge nor requires good faith in

12

an at-will employment relationship."[10] De Petris, 86 N.Y.2d at 410 (citing Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 297 (1983); Ingle v. Glamore Motor Sales, Inc., 73 N.Y.2d 183, 188 (1989)); see also Thompson v. Bosswick, 855 F. Supp. 2d 67, 84 (S.D.N.Y. 2012) ("'As the courts within this district have repeatedly recognized, well-settled New York law holds that no implied covenant of good faith and fair dealing attaches to at-will employment contracts.'" (quoting Nunez v. A-T Fin. Info. Inc., 957 F. Supp. 438, 443 (S.D.N.Y. 1997))).

Plaintiff's good faith and fair dealing claim also fails because "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Harris v. Provident Life & Acc. Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002); see also Kermanshah v. Kermanshah, 580 F. Supp. 2d 247, 271-72 (S.D.N.Y. 2008) ("'Such a claim may be brought, if at all, only if it is based on allegations different than those underlying the accompanying breach of contract claim.'" (quoting EUA Cogenex Corp. v. N. Rockland Cent. Sch. Dist., 124 F. Supp. 2d 861, 873 (S.D.N.Y. 2000))). Here, Plaintiff merely makes the conclusory allegation that the breach of the implied covenant was "not a breach of an express provision in the employment cont[r]act." (See SAC (Dkt. No. 30) ¶ 117) Plaintiff has not pled facts providing a basis for her good faith and fair dealing claim, however. Instead, she relies on the same facts cited in support of her breach of contract claim. Accordingly, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing will be dismissed.

---

[10] To the extent that Plaintiff's good faith and fair dealing claim is based on the first, definite term of the Agreement, that claim is time-barred. Flight Scis., Inc. v. Cathay Pac. Airways Ltd., 647 F. Supp. 2d 285, 288 (S.D.N.Y. 2009) ("[C]laims for breach of the covenant of good faith and fair dealing and for unjust enrichment are also subject to a six-year statute of limitations.").

13

## III.   **FRAUD**

Defendants argue that the SAC's allegations do not meet the heightened pleading

standards for fraud under Fed. R. Civ. P. 9(b).  (Def. Br. (Dkt. No. 34) at 19-20)  Defendants

also contend that Plaintiff's fraud claim is time-barred.  (Id. at 20)

The SAC's fraud allegations are as follows:

> 94. The defendants Arche, its servants, agents and/or employees and defendants
> Helaine made false misrepresentations of fact to plaintiff.

> 95. The defendants Arche, its servants, agents and/or employees and defendants
> Helaine made false misrepresentations of fact to plaintiff with the knowledge and
> belief that the statements were false with the intention to induce plaintiff's
> reliance on same.

> 96. The defendants Arche, its agents, servants and/or employees and defendants
> Helaine made factual misrepresentations of fact with the willful intent to deceive
> plaintiff by inducing plaintiff to enter into the employment contract.

> 97. The Plaintiff justifiably relied upon the factual misrepresentations made by
> defendants Arche and Helaine, where plaintiff performed her part of the
> employment cont[r]act, and suffered damages for the full amount of wages due
> and owing.

> 98. Defendants Arche, its servants, agents and/or employees and defendants
> Helaine are liable for fraud.

> 99. As a result of the foregoing, Plaintiff has been damaged in an amount to be
> determined by this Court, and for punitive damages, exemplary damages,
> attorney's fees, costs and disbursements of this action.

(SAC (Dkt. No. 30) ¶¶ 94-99)

"Such allegations, which fail to specify the time, place, speaker, and . . . even the

content of the alleged misrepresentations, lack the 'particulars' required by Rule 9(b)." Luce v.

Edelstein, 802 F.2d 49, 54 (2d Cir. 1986).

Plaintiff contends, however, that she "fully detailed" "the statements she alleges

to be fraudulent" in paragraphs 45 and 46 of the SAC.  (Pltf. Opp. Br. (Dkt. No. 35) at 8 (citing

14

SAC (Dkt. No. 30) ¶¶ 45-46)) Paragraphs 45 and 46 merely set forth the two terms of

Plaintiff's employment under the Agreement – "from January 1, 2002 to December 31, 2006,"

and "from January 1, 2007 forward" – and her compensation package under the Agreement.

(See SAC (Dkt. No. 30) ¶¶ 45-46) These paragraphs do not "specify the time, place, speaker,

and . . . content of the alleged misrepresentations." Luce, 802 F.2d at 54.

In sum, Plaintiff's fraud claim will be dismissed because the SAC's allegations

do not meet the pleading standard of Rule 9(b).[11]

## IV.   TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

Defendants argue that Plaintiff's "tortious interference with business relationship

claim fails because Plaintiff never alleges [that] Defendants engaged in tortious or criminal

conduct in connection with their hiring of [George] Wichner." (Def. Br. (Dkt. No. 34) at 22)

To state a claim for tortious interference with business relations under New York

law, a plaintiff must meet four conditions: "'(1) the plaintiff had business relations with a third

party; (2) the defendant interfered with those business relations; (3) the defendant acted for a

wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts

---

[11]  Because the SAC does not plead any of the particulars of the alleged fraudulent
misrepresentations, it cannot be determined with certainty whether Plaintiff's fraud claim is
time-barred. It appears doubtful that Plaintiff could plead a fraud claim that would fall within
the statute of limitations, however. New York law provides that fraud claims must be
commenced within "the greater of six years from the date the cause of action accrued or two
years from the time the plaintiff. . . . discovered the fraud, or could with reasonable diligence
have discovered it." N.Y. C.P.L.R. § 213(8); see also Huang v. Siam Commercial Bank Pub.
Co., 247 F. App'x 299, 301 (2d Cir. 2007) (noting that "statute of limitations [for fraud] begins
to run 'six years from the commission of the fraud or two years from discovery, whichever is
longer'" (quoting Triangle Underwriters, Inc. v. Honeywell, Inc., 604 F.2d 737, 746 (2d Cir.
1979))). Here, to the extent that Plaintiff's fraud claim is premised on misrepresentations about
her compensation, that claim would have accrued in 2002, when Defendants first allegedly
failed to comply with their payment obligations under the Agreement. (See SAC (Dkt. No. 30)
¶¶ 55-58) Given that this action was not commenced until 2015, any fraud claim based on
misrepresentations about compensation would appear to have expired long ago.

injured the relationship.'" 16 Casa Duse, LLC v. Merkin, 791 F.3d 247, 261 (2d Cir. 2015)

(quoting Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir. 2008)).

"[A]s a general rule," in order to satisfy the third element of tortious interference

with business relations, "the defendant's conduct must amount to a crime or an independent

tort":

> Conduct that is not criminal or tortious will generally be "lawful" and thus insufficiently
> "culpable" to create liability for interference with prospective contracts or other
> nonbinding economic relations.

Carvel Corp. v. Noonan, 3 N.Y.3d 182, 190 (2004). "[A]n exception [to the general rule] has

been recognized where a defendant engages in conduct 'for the sole purpose of inflicting

intentional harm on plaintiffs. . . .'" Id. (quoting NBT Bancorp, Inc. v. Fleet/Norstar Fin. Grp.,

Inc., 215 A.D.2d 990, 990 (3d Dept. 1995), aff'd, 87 N.Y.2d 614 (1996)); see also 16 Casa

Duse, 791 F.3d at 262 (noting that "this exception is narrow").

Here, Plaintiff alleges that Catherine Helaine and "Defendants Arche" "knew

that [P]laintiff had a business relationship with George Wichner," who managed Plaintiff's shoe

store on Third Avenue in New York City. (SAC (Dkt. No. 30) ¶¶ 101-02) Despite this

knowledge, Defendants allegedly "intentionally interfered with the relationship by procuring . . .

Wichner . . . to leave his position as manager with [P]laintiff, and take over [P]laintiff's

employment position as President of [D]efendants Arche." (Id. ¶ 102)

The "mere recruitment of a plaintiff's employee will not support a tortious

interference with business relationship claim," however. (Def. Br. (Dkt. No. 34) at 22 (citing

Medtech Prods., Inc. v. Ranir, LLC, 596 F. Supp. 2d 778, 798-99, 815-16 (S.D.N.Y. 2008);

Men Women NY Model Mgmt., Inc. v. Ford Models, Inc., 32 Misc.3d 1236(A), 2011 WL

3689360, at *5 (N.Y. Sup. Ct. Aug. 15, 2011))) Medtech is instructive on this point.

16

In Medtech, Medtech claimed that defendant had coopted its consultants to work on a competing product. See Medtech, 596 F. Supp. 2d at 806, 815. The court dismissed Medtech's tortious interference with business relations claim, noting that "there [were] no allegations in the Amended Complaint stating that when [defendants] contacted the [consultants], they were acting solely out of malice. Rather, the allegations in the Amended Complaint establish that [d]efendants were motivated by their own economic and competitive interests. . . ." Id. at 816.

Here, the SAC alleges that – in hiring Wichner – Defendants "acted solely out of malice." (SAC (Dkt. No. 30) ¶ 104) There are no factual allegations that make this conclusory assertion plausible, however, and a bare assertion that a defendant acted out of malice will not suffice. See Samsung Display Co. v. Acacia Research Corp., No. 14-CV-1353 (JPO), 2014 WL 6791603, at *5 (S.D.N.Y. Dec. 3, 2014) (dismissing tortious interference with business relations claim where complaint contained only "a threadbare recitation of the tort's third element"); JBCHoldings NY, LLC v. Pakter, 931 F. Supp. 2d 514, 536 (S.D.N.Y. 2013) (dismissing tortious interference with business relations claim where plaintiffs made "conclusory" "alleg[ation] that '[defendant] acted solely out of malice in interfering with [p]laintiffs' relationships'").

Accordingly, Plaintiff's claim for tortious interference with business relations will be dismissed.

## V.     TORTIOUS INTERFERENCE WITH CONTRACT

Defendants contend that Plaintiff has not stated a claim for tortious interference with contract, because "Plaintiff never alleges a valid contract between herself and a third party." (Def. Reply Br. (Dkt. No. 36) at 10)

17

The SAC alleges that Plaintiff entered into a written employment agreement "with defendant Andree Helaine on behalf of defendants Arche, its agents, servants and/or employees." (SAC (Dkt. No. 30) ¶ 43) This agreement is the only contract mentioned in the SAC.

In her tortious interference with contract claim, Plaintiff alleges that "defendant Catherine Helaine had knowledge of the employment contract between plaintiff and Andree Helaine," and that when Catherine Helaine persuaded George Wichner "to leave his position [as] manager [of Plaintiff's Third Avenue shoe store] and take [P]laintiff's position as President of Arche," "defendant Catherine Helaine [thereby] breached the employment contract with Plaintiff." (Id. ¶¶ 109-110)

Under New York law, the elements of a tortious interference with contract claim are

> (1) "the existence of a valid contract between the plaintiff and a third party"; (2) the "defendant's knowledge of the contract"; (3) the "defendant's intentional procurement of the third-party's breach of the contract without justification"; (4) "actual breach of the contract"; and (5) "damages resulting therefrom."

Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006) (quoting Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424 (1996)).

The only contract that Plaintiff has alleged in the SAC is her employment agreement with Defendants. That contract cannot serve as the basis for a tortious interference with contract claim, however, because Defendants cannot, as a matter of law, have tortiously interfered with their own contract. See TVT Records v. Island Def Jam Music Grp., 412 F.3d 82, 88 (2d Cir. 2005) ("One asserting a tortious interference claim must . . . show that the defendant was not a party to the contract with which he allegedly interfered." (citing Finley v. Giacobbe, 79 F.3d 1285, 1295 (2d Cir. 1996))). To the extent that Plaintiff intends to allege that

18

Defendants tortiously interfered with a contract between Plaintiff and Wichner, the SAC pleads

no facts suggesting, inter alia, that such a contract existed, or that Defendants knew of that

contract. See Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC, 861 F. Supp. 2d 344, 367

(S.D.N.Y. 2012) (dismissing tortious interference claim where plaintiff "ha[d] not adequately

alleged the existence of a specific contract between itself and a particular third party"); Ho

Myung Moolsan Co. v. Manitou Mineral Water, Inc., 665 F. Supp. 2d 239, 255 (S.D.N.Y. 2009)

(denying leave to amend tortious interference with contract claim where "plaintiffs failed to

identify a specific third-party contract"). Accordingly, Plaintiff's tortious interference with

contract claim will be dismissed.

## VI.    *QUANTUM MERUIT* AND UNJUST ENRICHMENT

Defendant argues that Plaintiff's quantum meruit and unjust enrichment claims

must be dismissed because Plaintiff "never alleges the payments she received fell short of the

reasonable value for her labor." (Def. Br. (Dkt. No. 34) at 25)

"Under New York law, quantum meruit and unjust enrichment claims may be

analyzed in tandem as a single quasi-contract claim." Ciamara Corp. v. Widealab, Inc., No. 13

Civ. 1142 (JMF), 2013 WL 6331927, at *4 (S.D.N.Y. Dec. 5, 2013) (citing Mid-Hudson

Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005)

("Applying New York law, we may analyze quantum meruit and unjust enrichment together as

a single quasi contract claim.")).

> "In order to make out a cause of action in quantum meruit or quasi contract, a
> plaintiff must establish (1) the performance of services in good faith; (2) the
> acceptance of those services by the person to whom they are rendered; (3) an
> expectation of compensation therefor; and (4) the reasonable value of the
> services."

19

Aqua Creations USA Inc. v. Hilton Hotels Corp., No. 10 Civ. 246 (PGG), 2011 WL 1239793, at *7 (S.D.N.Y. Mar. 28, 2011) (quoting Landcom, Inc. v. Galen-Lyons Joint Landfill Comm'n, 259 A.D.2d 967, 967 (4th Dept. 1999)), aff'd sub nom. Aqua Creations USA Inc. v. Hilton Worldwide, Inc., 487 F. App'x 627 (2d Cir. 2012).

Here, the motion turns on the fourth element. The SAC alleges that Defendants "failed and refused to pay plaintiff's wages and/or compensation owed for the reasonable value of her services." (SAC (Dkt. No. 30) ¶ 136) Defendants contend, however, that this is "merely . . . a bald assertion," and that "[t]here are no allegations describing why Plaintiff's annual compensation of (at least) $450,000 per year was unreasonable." (Def. Reply Br. (Dkt. No. 36) at 11-12)

Although Plaintiff alleges that she served as Arche's President and "develop[ed] Arche into a prestigious international brand, with global annual sales exceeding the sum of $15,000,000.00" (SAC (Dkt. No. 30) ¶¶ 45, 49), Plaintiff does not plead facts detailing the services she provided to Defendants. Accepting Plaintiff's allegations as true, she received $450,000 in salary per year, plus an unspecified amount of variable compensation. (See id. ¶¶ 46, 55, 57) "[B]ecause [P]laintiff[] ha[s] set forth no more than vague and conclusory allegations regarding what services [she] provided to [D]efendants or what the reasonable value for these services was, [she] ha[s] failed to state a claim for quantum meruit."[12] DeSilva v. N.

---

[12] The reasonable value of Plaintiff's services cannot be determined solely on the basis of her employment agreement. "[Q]uantum meruit is intended to avoid a party's unjust enrichment; it is certainly not a device wherein a plaintiff may enforce a purported agreement which might ultimately be found not to be viable." Martin H. Bauman Assocs., Inc. v. H & M Int'l Transp., Inc., 171 A.D.2d 479, 484 (1st Dept. 1991). Here, as discussed above, Plaintiff does not have a viable breach of contract claim based on her employment agreement because (1) she was an at-will employee who (2) accepted Defendants' allegedly reduced payments for many years and (3) is, as a result, "deemed to have acquiesced to the new terms of [her] employment." Arakelian, 735 F. Supp. 2d at 32-33.

Shore-Long Island Jewish Health Sys., Inc., 770 F. Supp. 2d 497, 535 (E.D.N.Y. 2011) (citing

Singerman v. Reyes, 240 A.D.2d 335, 336 (1st Dept. 1997)); see also Hajny v. Best Roofing of

New Jersey, Inc., No. 11 Civ. 00173 (LLS), 2011 WL 2493737, at *7 (S.D.N.Y. June 22, 2011)

(dismissing quantum meruit claim where "[p]laintiffs d[id] not allege the reasonable value of

the services they rendered to defendants"); Broughel v. Battery Conservancy, No. 07-CV-7755

(GBD), 2009 WL 928280, at *8 (S.D.N.Y. Mar. 30, 2009) (noting that "a quantum meruit claim

will be dismissed where the complaint contains nothing more than undefined and conclusory

statements regarding the actual benefit plaintiff conferred on the defendant").

        Plaintiff's quantum meruit and unjust enrichment claims will be dismissed.

## VII.  CIVIL RICO

        Plaintiff alleges that Defendants engaged in a pattern of racketeering activity and

that the Corporate Defendants constitute a racketeering enterprise.  (SAC (Dkt. No. 30) ¶¶ 72-

80)  Plaintiff further alleges that

> in order to obtain financing from French banks, [Defendants] would deliver
> shipments of shoes to United States locations (such as the one operated by
> Plaintiff) on an earlier time schedule in order to show increased volume in their
> year-end books.
>
> . . . These actions were all performed to create the false appearance of increased
> accounts receivables so that they could fraudulently obtain loans from investors.

(Id. ¶¶ 82-83)  The SAC pleads that Plaintiff "suffered injury to his [sic] business or property,

and damages, including economic or financial damages, proximately caused by Defendants' . . .

unlawful actions."  (Id. ¶ 81)  The SAC goes on to allege that

> [a]s detailed above, Defendants . . . committed certain predicate acts including,
> but not limited to, mail and wire fraud, by shipping goods from France to the
> United States, falsifying accounts receivable documents and procuring profits
> from banks as a result.

(Id. ¶ 140) Despite the reference to "as detailed above," the SAC does not allege any use of the mail and wires in furtherance of Defendants' alleged fraudulent scheme.

Defendants argue, inter alia, that Plaintiff's "civil RICO claim . . . fails because Plaintiff does not allege an injury to her business or property caused by an illegal act of mail or wire fraud." (Def. Reply Br. (Dkt. No. 36) at 13)

## A.    Applicable Law

To sustain a private cause of action under RICO, a plaintiff must allege: "(1) the defendant's violation of 18 U.S.C. § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 283 (2d Cir. 2006) (internal quotation marks and alteration omitted); see also 18 U.S.C. § 1964(c) (providing a cause of action for "[a]ny person injured in his business or property by reason of a violation" of Section 1962).

A RICO plaintiff must also plead facts sufficient to demonstrate that the plaintiff's injury was caused by the defendant's racketeering activities. See Ideal Steel Supply Corp. v. Anza, 652 F.3d 310, 323 (2d Cir. 2011). Where, as here, a RICO violation is predicated on acts of fraud, a plaintiff must allege that the defendant's acts were not only the "but for" cause of plaintiff's injury, but the proximate cause as well, necessitating "some direct relation between the injury asserted and the injurious conduct alleged"; "[a] link that is too remote, purely contingent, or indirect is insufficient." Hemi Grp., LLC v. City of New York, 559 U.S. 1, 9 (2010) (internal quotation marks and alteration omitted). This causation requirement is necessary because "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other,

22

independent, factors." Ideal Steel, 652 F.3d at 316 (alteration omitted) (quoting Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 458 (2006)).

Moreover, "[t]o establish proximate causation," RICO plaintiffs "must plead that they were 'the targets, competitors [or] intended victims' of the [fraudulent] scheme." Tymoshenko v. Firtash, 57 F. Supp. 3d 311, 322 (S.D.N.Y. 2014) (quoting Lerner v. Fleet Bank, N.A., 318 F.3d 113, 124 (2d Cir. 2003)); see also Lerner, 318 F.3d at 124 ("we have repeatedly emphasized that the reasonably foreseeable victims of a RICO violation are the targets, competitors and intended victims of the racketeering enterprise" (citing In re Am. Express Co. S'holder Litig., 39 F.3d 395, 400 (2d Cir. 1994) (holding that injury to American Express shareholders was neither the "preconceived purpose" nor the "specifically-intended consequence" of a scheme to discredit an American Express competitor); Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 24 (2d Cir. 1990) (holding that the loss of employment for failure to cooperate in RICO scheme was not proximately caused by racketeering activity because the employee was not "the target of the racketeering enterprise"); Sperber v. Boesky, 849 F.2d 60, 64 (2d Cir. 1988) (holding that plaintiffs were not injured by defendant's racketeering activities with regard to companies whose stock the plaintiffs did not own, because any artificial increase in the price of stocks plaintiffs owned was too remote from defendant's illegal activities to satisfy the proximate causation requirement))).

"The Second Circuit has instructed that 'RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it.'" BWP Media USA Inc. v. Hollywood Fan Sites, LLC, 69 F. Supp. 3d 342, 362 (S.D.N.Y. 2014) (quoting Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 489 (2d Cir. 2014)).

23

## B.    Analysis

As noted above, the SAC alleges that Defendants "committed certain predicate acts including, but not limited to, mail and wire fraud, by shipping goods from France to the United States, falsifying accounts receivable documents and procuring profits from banks as a result." (SAC (Dkt. No. 30) ¶ 140) According to Plaintiff, the purpose of Defendants' allegedly fraudulent "actions [was] . . . to create the false appearance of increased accounts receivables so that they could fraudulently obtain loans from investors." (Id. ¶¶ 81-84; see also id. ¶ 150 (purpose of Defendants' alleged acts of financial malfeasance was to "create an appearance of a positive financial situation [at Arche]"); id. ¶ 152 (Defendant Pierre-Emanuel Helaine revised "the year-end financials in one of Plaintiff's stores in order to falsely make Defendants' books more appealing to potential investors"); id. ¶ 153 ("all monetary figures were provided by Arche . . . based in France . . . [in order] to falsely make Defendants' books more appealing to potential investors"); id. ¶ 154 (Defendants "refused to provide Plaintiff with spreadsheets and other information so that they could have complete control over the books, in order to falsely make them more appealing to potential investors"); id. ¶ 155 ("In or about October 2014, Catherine Helaine billed stores formerly owned by Plaintiff for merchandise never delivered to said stores, in an attempt to increase Plaintiff's debt and falsely make the books of Arche . . . more appealing to potential investors"); id. ¶ 157 ("Defendants . . . sent a bill to Plaintiff for shoes that were not actually shipped, and then gave Plaintiff a credit of $300,000, all in an effort to falsely make companies owned by Defendants . . . more appealing to potential investors"))

The pleading issue as to these and nearly all of the other allegations concerning Plaintiff's civil RICO claim is that they do not demonstrate that Plaintiff was the target and

intended victim of Defendants' alleged fraudulent scheme, or that Defendants' actions caused any injury to Plaintiff's business or property.[13] While Plaintiff pleads facts suggesting that Defendants were engaged in a fraudulent scheme to mislead potential investors, in order for her to maintain a civil RICO claim against Defendants, she must demonstrate that she was the target and intended victim of Defendants' scheme and that she suffered injury to her business and property as a result of Defendants' alleged acts of racketeering. See Ideal Steel, 652 F.3d at 323; Lerner, 318 F.3d at 124. Instead, Plaintiff has pled facts making out a fraudulent scheme directed – not at herself – but at potential investors in Arche. Pleading a fraudulent scheme directed at potential investors in Arche is not sufficient for Plaintiff to state a civil RICO claim against Defendants, however. See Tymoshenko, 57 F. Supp. 3d at 322 ("To establish proximate

_____

[13]  Similar allegations in the SAC include the following:  that Defendants (1) "listed shipments purportedly sent in July 2014 to Plaintiff in their financial statements, even though the[] shipments ([worth] approximately $400,000) were never actually sent" (SAC (Dkt. No. 30) ¶ 142); (2) transferred money from Arche USA to Arche, Andree Helaine, Catherine Helaine and Pierre-Emmanuel Helaine even though "Pierre-Emmanuel Helaine was not an employee or shareholder of Arche" (id. ¶ 145); (3) "caused Arche USA to pay for many of [the expenses of the other Arche entities], including advertising and design, for which Arche USA received no benefit" (id. ¶ 146); (4) "caused approximately $5,000,000.00 to be transferred fromm Arche USA to Andree Helaine during the period she was part owner of Arche" (id. ¶ 147); (5) "[i]n order to avoid listing 'bad debts' on their books, . . . would systematically and consistently take money from Arche USA to cover said debts, without returning said monies to Arche USA" (id. ¶ 148); (6) "took between $5,000,000.00 and $7,000,000.00 from Arche USA to pay for daughter Isabelle's shares and/or inheritance taxes" (id. ¶ 149); (7) "[s]ince 2011, . . . caused delays, errors and discrepancies" in reporting financial information that "falsely ma[d]e Defendants' books more appealing" (id. ¶ 153); (8) "refused to provide Plaintiff with spreadsheets and other information so that [Defendants] could have complete control over the books" (id. ¶ 154); (9) "failed to follow statutory corporate formalities, including the holding of regular meeting[s]" (id. ¶ 159); (10) had "[a]ll corporate books for the companies owned by Defendants . . . and Plaintiff . . . calculated by the same accountant" (id. ¶ 161); and (11) "improperly transferred corporate money into and out of [the individual Defendants'] personal accounts." (Id. ¶ 162).

As to all of these allegations, the SAC does not plead facts suggesting that Plaintiff was the target and intended victim of these alleged fraudulent acts, nor does the SAC explain how these acts caused injury to Plaintiff's business or property.

causation," RICO plaintiffs "must plead that they were 'the targets, competitors [or] intended victims' of the marketing scheme. Plaintiff[] ha[s] failed to meet that pleading requirement. The intended victims of the . . . scheme were unidentified . . . investors. . . ." (quoting Lerner, 318 F.3d at 124)).  And even where Plaintiff alleges some direct interaction with her business – such as Defendants' billing her for shoes that had never been shipped and then crediting her for the cost of the shoes (see SAC (Dkt. No. 30) ¶ 157) – it does not appear that she suffered an injury to her business or property.  (See also id. ¶ 143 (alleging that Defendants "sent invoices to Plaintiff's place of business in or about October 2014 and demanded payment for the invoices, even though the goods listed on said invoices were never delivered," but not alleging that Plaintiff paid these invoices))

The few allegations in the SAC alleging some loss to Plaintiff do not provide a basis for a civil RICO claim.  For example, Plaintiff claims that Defendants reduced her salary "[i]n order to create an appearance of a positive financial situation."  (Id. ¶¶ 150-51)  As discussed above, however, no fraud claim can be premised on the reduction in Plaintiff's salary, because she was an at-will employee, and because any such fraud claim would be duplicative of her breach of contract claim.  Plaintiff also alleges that she "lost at least $300,000.00 in having to return shipments of product."  (Id. ¶ 158)  Later in the SAC, however, Plaintiff claims that she "was damaged . . . in that Plaintiff was forced to maintain extra goods."  (Id. ¶ 169)  Even assuming the truth of these contradictory allegations, they are not sufficient to demonstrate that Plaintiff was the target and intended victim of Defendants' alleged racketeering scheme.  Proof that Plaintiff suffered a tangential injury to her business as a result of a fraudulent scheme directed at potential investors in Arche does not demonstrate proximate cause for purposes of a civil RICO claim.  See Lerner, 318 F.3d at 124.

26

In addition to failing to plead facts that demonstrate proximate causation, the SAC does not adequately allege use of the mail or wires in furtherance of the alleged racketeering scheme. To plead a RICO claim based on mail and wire fraud, a complaint must allege that "the defendant 'caused' the mailing or use of the wires" and that "the mailing or use of the wires 'was for the purpose of executing the scheme or, in other words, incident to an essential part of the scheme.'" Maersk, Inc. v. Neewra, Inc., 687 F. Supp. 2d 300, 332 (S.D.N.Y.2009) (quoting United States v. Bortnovsky, 879 F.2d 30, 36 (2d Cir. 1989)). The SAC contains no such allegations. See Tymoshenko, 57 F. Supp. 3d. at 321 (dismissing civil RICO claim where plaintiff had "fail[ed] to adequately plead wire or mail fraud in connection with [the alleged racketeering scheme, because] . . . the SAC never alleges that the defendants used interstate wires or mail in connection with their fraudulent conduct").

Plaintiff's allegations also do not comply with the particularity requirements of Rule 9(b). Alleged predicate acts of "mail [or wire] fraud must . . . typically specify the content, date, and place of any misrepresentations, and the identity of the persons making them." Aliev v. Borukhov, No. 15-CV-6113 (ERK) (JO), 2016 WL 3746562, at *7 (E.D.N.Y. July 8, 2016) (citing Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990)); see also Thai Airways Int'l Ltd. v. United Aviation Leasing B.V., 891 F. Supp. 113, 117 (S.D.N.Y. 1994) ("Allegations of predicate acts based on fraud must satisfy the pleading requirements of Rule 9(b) in order to be considered part of a RICO pattern." (citing CNBC, Inc. v. Alvarado, No. 93 CIV. 2261 (JFK), 1994 WL 445717, at *2 (S.D.N.Y. Aug. 17, 1994); Update Traffic Sys., Inc. v. Gould, 857 F. Supp. 274, 281 (E.D.N.Y. 1994))), aff'd, 59 F.3d 20 (2d Cir. 1995). The SAC's allegations in support of the civil RICO claim do not contain the requisite details.

For all of these reasons, Plaintiff's civil RICO claim will be dismissed.

## VIII. **LEAVE TO AMEND**

District courts "ha[ve] broad discretion in determining whether to grant leave to amend." Gurary v. Winehouse, 235 F.3d 793, 801 (2d Cir. 2000). Leave to amend may properly be denied in cases of "'undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir.2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)); see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015) (reaffirming "the grounds on which denial of leave to amend has long been held proper," including "undue delay, bad faith, dilatory motive, and futility").

Here, Plaintiff has already amended her complaint twice. On June 30, 2015, prior to accepting briefing on the instant motion, the Court held a conference during which it highlighted numerous deficiencies in the Amended Complaint and permitted Plaintiff an opportunity to amend yet again. Plaintiff then filed the Second Amended Complaint, which contains the deficiencies discussed above, all of which the Court brought to Plaintiff's counsel's attention at the June 30, 2015 conference. (See June 30, 2015 Conf. Tr. (Dkt. No. 39))

For example, the Court informed Plaintiff's counsel of its concern that (1) the facts pleaded in the Amended Complaint were not sufficient to "take this case out of the general rule that an employer is free to terminate an at-will employee for any lawful reason" (id. at 6); (2) fraud had not been pled with the necessary particularity (id. ("[T]he amended complaint does not plead fraud with particularity. It doesn't tell us what statements were fraudulent. It doesn't tell us who made the statements. It doesn't say where and when they were made, and it

28

doesn't explain why the statements were fraudulent.")); (3) Plaintiff had not made out a claim for tortious interference with business relations, based on Arche's hiring of Wichner (id. at 6-7); (4) Plaintiff's tortious interference with contract claim was flawed (id. at 7); (5) the claim for violation of the covenant of good faith and fair dealing could not succeed, because "[t]here is law to the effect that where an individual is an at-will employee, New York does not 'require good faith'" (id. at 7 (quoting De Petris, 86 N.Y.2d at 410)) and that "an implied covenant of good faith does not attach to employment contracts governed by New York law" (id. (quoting Tischmann v. ITT/Sheraton Corp., 882 F. Supp. 1358, 1367 (S.D.N.Y. 1995))); (6) the unjust enrichment and quantum meruit claims were not supported by "facts sufficient to demonstrate that the plaintiff did not receive reasonable value in exchange for the services that she provided to Arche" (id. at 8; see also id. at 8-9); (7) as to the civil RICO claim, Plaintiff alleged that Defendants were "misrepresenting the volume of [their] sales or revenue . . . for purposes of obtaining bank loans from French banks," and that it was "not clear to [the Court] how the plaintiff was injured by the alleged RICO scheme." (Id. at 9-10) After outlining the elements of a civil RICO claim, including injury, causation, a pattern of racketeering activity, and proof of a racketeering enterprise, the Court informed Plaintiff's counsel that it did not "believe there are facts pled sufficient to make [out] all the elements . . . of a RICO claim." (Id. at 10)

Given this record, there is no reason to believe that the deficiencies in Plaintiff's claims can be cured through re-pleading. Accordingly, the Second Amended Complaint will be dismissed without leave to amend. See Ruotolo, 514 F.3d at 191 (leave to amend may properly be denied in cases of "'repeated failure to cure deficiencies by amendments previously allowed'") (quoting Foman, 371 U.S. at 182)); see also Shapiro v. Goldman, No. 14 Civ. 10119 (NRB), 2016 WL 4371741, at *23 (S.D.N.Y. Aug. 15, 2016) (denying "any request to re-plead

29

the instant causes of action" where "Plaintiff . . . had three chances to plead his claims" and "he was put on notice . . . [of] most of the arguments [the court] . . . addressed [in its dismissal order]"); Lopez v. Ctpartners Exec. Search Inc., No. 15 Civ. 1476 (PAE), 2016 WL 1276457, at *23 (S.D.N.Y. Mar. 29, 2016) (denying leave to amend where plaintiff had been put on notice of defendant's arguments in favor of dismissal; "[p]ermitting plaintiff to file a second amended complaint under [such] circumstances would . . . needlessly burden counsel and the Court, and unhelpfully encourage counsel in future cases to forego earlier opportunities to replead once on notice of the full arguments favoring dismissal").

## CONCLUSION

For the reasons stated above, the Corporate Defendants' motion to dismiss is granted. Defendants' motion for oral argument regarding the motion is denied as moot.

All claims against Defendants Andree Helaine, Catherine Helaine, and Pierre-Emanuel Helaine will likewise be dismissed. As noted above, the individual defendants have -not moved to dismiss the SAC, because they have not been served. The claims against the Corporate Defendants depend entirely on the acts of the individual defendants, however, and all of this Court's rulings on the SAC's causes of action apply with equal force to the individual defendants.[14]

---

[14] The SAC's claims are – with the exception of Plaintiff's "piercing the corporate veil" cause of action (SAC (Dkt. No. 30) ¶¶ 125-132) – brought against both the Corporate Defendants and the individual defendants. "New York law does not recognize ["piercing the corporate veil"] as an independent cause of action," however. Rumelt v. Bromley Coats, Inc., No. 98 Civ. 5547 (AGS), 1998 WL 851512, at *4 (S.D.N.Y. Dec. 8, 1998) (citing Morris v. New York State Dep't of Taxation & Fin., 82 N.Y.2d 135, 141 (1993)); see also Hangzhou Kailai Neckwear Apparel Co. v. NCP Direct Sourcing, Inc., No. 15-CV-1441 (AJN), 2016 WL 4400306, at *3 n.3 (S.D.N.Y. Aug. 17, 2016) ("the Court notes that 'an attempt of a third party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation'" (quoting Morris, 82 N.Y.2d at 141)). Accordingly, Plaintiff's "piercing the corporate veil" cause of action fails to state a claim.

30

"[W]hile dismissing a complaint as to a non-moving defendant is not an ordinary practice, a district court may dismiss claims <u>sua sponte</u> for failure to state a claim, at least so long as the plaintiff had notice and an opportunity to be heard on the issue." <u>First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.</u>, 219 F. Supp. 2d 576, 580 (S.D.N.Y. 2002) (footnotes omitted) (citing <u>Wachtler v. County of Herkimer</u>, 35 F.3d 77, 82 (2d Cir. 1994) ("'The district court has the power to dismiss a complaint <u>sua sponte</u> for failure to state a claim,' <u>Leonhard v. United States</u>, 633 F.2d 599, 609 n.11 (2d Cir. 1980), <u>cert. denied</u>, 451 U.S. 908 (1981), so long as the plaintiff is given notice and 'an opportunity to be heard.' <u>Thomas v. Scully</u>, 943 F.2d 259, 260 (2d Cir. 1991) (<u>per curiam</u>).")); <u>see also</u> <u>Aetna Cas. & Sur. Co. v. Aniero Concrete Co.</u>, 404 F.3d 566, 591 (2d Cir. 2005) (<u>per curiam</u>) (noting that "district court may dismiss a complaint <u>sua sponte</u>, for failure to state a claim, as to non-moving defendants"); <u>Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC</u>, 467 F. Supp. 2d 394, 399 (S.D.N.Y. 2006) ("It would be a waste of judicial resources to allow this legally defective claim, as to which plaintiff has been fully heard, to be pursued against Farkas just because she has not yet moved to dismiss it.").

Here, Plaintiff had notice of Defendants' arguments in favor of dismissal – both before the motion was filed, and in the motion itself – and a full opportunity to be heard on the merits of those arguments, which apply with equal force to both the Corporate Defendants and the individual defendants. Accordingly, Plaintiff's claims against the individual defendants are dismissed.

31

The Clerk of the Court is directed to terminate the motions (Dkt. Nos. 33, 37) and to close this case.

Dated: New York, New York
       September 13, 2016

SO ORDERED.

Paul G. Gardephe
United States District Judge

32